WO　　　　　IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOE MOODY, et al.,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　vs.　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
HANS MUNICH, et al.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　No. 1:23-cv-0006-HRH
　　　　　　　　Defendants.　　　　　　　)
_____)

O R D E R

Motion to Remand

Plaintiffs Joe Moody, Mark Pellett, and Barbara Sylvester-Pellett move to remand this matter to state court.[1] This motion is opposed by defendants Hans Munich, Tanya Hutchins, and Coastal Air Service LLC.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiffs allege that Munich and Hutchins are the owners/operators of "a charter aircraft service, Yakutat Coastal Airlines and Coastal Air Service, LLC[.]"[3] Plaintiffs allege

_____

[1]Docket No. 8.

[2]Docket No. 13.

[3]Complaint at 2, ¶¶ 2.4, 2.5, Exhibit 1, Notice of Removal, Docket No. 1.

-1-

that on May 24, 2022, Moody and Pellett were passengers on a flight operated by defendants from Yakutat, Alaska to Dry Bay Airport, Alaska.[4] Plaintiffs allege that "[d]efendants ... did not weigh the cargo, baggage, or passengers, nor did [d]efendants solicit any weight information[.]"[5] Plaintiffs further allege that "[d]efendants did not perform a pre-flight weight and balance calculation for the flight...."[6]

Plaintiffs allege that "while approaching and setting up to land on runway 23 at Dry Bay Airport, Hans Munich slowed down the aircraft significantly, apparently in an attempt for a short field landing so that he could turn off the runway at the nearest exist which was closest to passenger drop-off spot."[7] Plaintiffs allege that "[t]his saved time and fuel; otherwise, the aircraft would land and need to turn around on the runway and taxi back to the drop-off location."[8] Plaintiffs allege that "[w]hile on a short final to runway 23, the aircraft suddenly pitched up, rolled left, and stalled when it was approximately 300 feet above the ground. The airplane then dove nose down but partially leveled off when it impacted numerous trees short of the runway."[9]

---

[4] Id. at 4, ¶¶ 3.2, 3.3.

[5] Id. at 5, ¶ 3.4.

[6] Id.

[7] Id. at 5, ¶ 3.8.

[8] Id.

[9] Id. at 5-6, ¶ 3.8.

Plaintiffs allege that Moody and Pellett "were seriously injured and incapacitated and trapped in the wreckage for some time until bystanders and rescuers could free them from the airplane."[10] Plaintiffs allege that Moody "suffered from severe internal injuries, including spinal fractures, multiple rib fractures, and pelvic and leg fractures."[11] Plaintiffs allege that Moody "was hospitalized and received treatment in Washington for nearly four months before being able to return to his home in Arizona."[12]

Plaintiffs allege that Pellett "broke both femurs, both sets of tibia and fibula, multiple ribs, and vertebrae and suffered other serious internal injuries."[13] Plaintiffs allege that Pellett "was hospitalized in Alaska for more than three months before returning to his home state of Maine."[14] Plaintiffs allege that Sylvester-Pellett, Pellett's wife, "was not on the accident flight" but that "since the accident she has been his caregiver and has suffered loss of time, enjoyment of life, loss of consortium, and emotional distress, and economic loss, all arising from her husband's injuries in the accident."[15]

---

[10] Id. at 6, ¶ 3.9.

[11] Id. at 6, ¶ 3.10.

[12] Id.

[13] Id. at 6, ¶ 3.11.

[14] Id.

[15] Id. at 7, ¶ 3.12.

On May 24, 2023, plaintiffs commenced this action in state court. In their complaint, plaintiffs assert a negligence claim and a fraudulent conveyance claim.[16] Plaintiffs' negligence claim is based on allegations defendants breached their duty of care because they violated a number of federal aviation regulations.[17] More specifically, plaintiffs allege that defendants violated 14 C.F.R. §§ 91.7 (aircraft airworthiness), 91.9(a) (aircraft flight manual), 91.13 (careless operations), 91.119 (minimum safe altitudes), 135.63(d) (recordkeeping), 135.117 (pre-flight briefings), and 135.123 (emergencies). On their negligence claim, plaintiffs seek economic, noneconomic, and punitive damages.

On June 29, 2023, defendants removed the action to this court. On July 19, 2023, defendants answered plaintiffs' complaint.[18] In their answer, defendants Munich and Yakutat Coastal Airways admit that they owed a duty to plaintiffs "to exercise reasonable care for the health, welfare, and safety of [their] passengers."[19] Defendants also raise an affirmative defense that "[a]ny claims alleging liability based upon Alaska law are preempted."[20]

Plaintiffs now move to remand the matter to state court.

---

[16] The second cause of action in plaintiffs' complaint is a punitive damages claim, but as plaintiffs concede, "[p]unitive damages are not a cause of action; they are a relief." Memorandum of Law in Support of Plaintiffs' Motion to Remand at 15, Docket No. 9.

[17] Complaint at 8-9, ¶¶ 4.5-4.17, Exhibit 1, Notice of Removal, Docket No. 1.

[18] Docket No. 6.

[19] Id. at 3, ¶ 4.2.

[20] Id. at 8, ¶ 5.

-4-

Discussion

"The federal removal statute provides that 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... may be removed by the defendant ... to the district court of the United States.'" Sauk-Suiattle Indian Tribe v. City of Seattle, 56 F.4th 1179, 1184 (9th Cir. 2022) (quoting 28 U.S.C. § 1441(a)). "District courts have original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Id. (quoting 28 U.S.C. § 1331). "A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009). Defendants have "'the burden to establish that removal is proper.'" Sharma v. HSI Asset Loan Obligation Trust 2007-1 by Deutsche Bank Nat'l Trust Co., 23 F.4th 1167, 1169 (9th Cir. 2022) (quoting Canela v. Costco Wholesale Corp., 971 F.3d 845, 849 (9th Cir. 2020)). The court "'strictly construe[s] the removal statute against removal jurisdiction.'" Id. at 1170 (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009).

Defendants removed this action based on federal question jurisdiction. Plaintiffs read defendants' notice of removal as asserting three federal question bases for removal: "(1) the existence of a federal private right of action under the" Federal Aviation Act ("FAA"); "(2) FAA 'complete' preemption of aviation safety; [and] (3) plaintiffs' right to relief depends

-5-

on resolution of a significant disputed federal question."[21]  Plaintiffs, however, argue that their complaint, which contains two state-law claims, was not removable on any of these grounds.

As for the first basis, there is no question "that the FAA provides for no private civil remedies, either express or implied." O.S. ex rel. Sakar v. Hageland Aviation Services, Inc., 609 F.Supp.2d 889, 894 (D. Alaska 2008) (citing In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 408 (9th Cir. 1983)).  As for the second basis, in their response to the instant motion, defendants expressly state that removal was not "based on the doctrine of complete preemption."[22]  And, to the extent that defendants may have been relying on ordinary preemption as a basis for removal, that reliance would be misplaced.  Ordinary preemption "is a defense to enforcement of state law, which defense may be raised in a defendant's answer, but it is not a basis for federal question jurisdiction." Littel v. Bridgestone/Firestone, Inc., 259 F.Supp.2d 1016, 1022 (C.D. Cal. 2003).

That leaves defendants' third basis for removal, "the substantial federal question doctrine[.]" Newtok Village v. Patrick, 21 F.4th 608, 618 (9th Cir. 2021).  "This doctrine permits federal courts to hear certain claims recognized under state law 'that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'" Id. (quoting Grable

---

[21]Memorandum of Law in Support of Plaintiffs' Motion to Remand at 5, Docket No. 9.

[22]Defendants' Opposition to Plaintiff's Motion to Remand at 5, Docket No. 13.

& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005)). "This standard is met where a federal issue is: '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" Id. at 618 (quoting Gunn v. Minton, 568 U.S. 251, 258 (2013)). Only "a 'special and small category' of cases" will meet these requirements, which are also known as the Grable test. Gunn, 568 U.S. at 258.

In Grable, real property belonging to Grable was sold to Darue to satisfy "Grable's federal tax delinquency." Grable, 545 U.S. at 310. "Grable [then] brought a quiet title action in state court, claiming that Darue's record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by § 6335(a), which provides that written notice must be 'given by the Secretary to the owner of the property [or] left at his usual place of abode or business.'" Id. at 311 (quoting 26 U.S.C. § 6335(a)). "Grable said that the statute required personal service, not service by certified mail[,]" which is how Grable had been served. Id. at 310-11. "Darue removed the case to Federal District Court as presenting a federal question," arguing that "the claim of title depended on the interpretation of the notice statute in the federal tax law." Id. at 311. The Court held that there was removal jurisdiction, explaining that "[w]hether Grable was given notice within the meaning of the federal statute is ... an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." Id. at 314-15. The Court further explained that "[t]he meaning

of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court" and that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." Id. at 315.

Defendants argue that plaintiffs' negligence claim is similar to the claim in Grable and that it meets all the requirements of the Grable test. Defendants argue that "the relevant standard of care applicable to [p]laintiffs' [negligence] claim will necessarily and exclusively be supplied by federal law" and that this will "involve the interpretation and application of a complex and technical federal regulatory scheme[.]"[23] Defendants contend that there is a need for uniformity with regard to aviation safety and thus insist that plaintiffs' negligence claim raises significant federal issues which "sensibly belong in a federal court." Id. at 312. Defendants also argue that allowing plaintiffs' claim to be heard in a federal forum will not upset any federal-state judicial balance approved by Congress. Rather, defendants argue that Congress has intended that aviation safety be a federal concern as evidenced by the extensive federal regulation of the industry. Defendants argue that allowing plaintiffs' case to be removed to federal court will not cause an "enormous shift of traditionally state cases into federal courts." Id. at 319. Defendants contend that "[t]here are few, if any, state-law tort claims that involve such a uniquely and exclusively federal interest as aviation safety and the

---

[23]Defendants' Opposition to Plaintiffs' Motion to Remand at 9, Docket No. 13.

airworthiness of aircraft, and therefore providing access to the federal courts" for cases such as this, "will affect few, if any, other tort claims."[24]

Defendants cite to McMahon v. Presidential Airways, Inc., 410 F.Supp.2d 1189 (M.D. Fla. 2006), as an example of an aviation accident case in which the court applied the substantial federal question doctrine.[25] McMahon was "a negligence case brought under Florida's Wrongful Death Act by the survivors of three United States soldiers killed while serving in Afghanistan." Id. at 1192. "The [d]efendants allegedly had contracted with the United States of America ... to provide air transportation and operational support services to the Department of Defense ... in Afghanistan[.]" Id. (citation omitted). The court concluded that the plaintiffs' claims "raise[d] substantial questions of federal law that ... support[ed] removal jurisdiction" because "a government contract and United States military operations are implicated, and substantial contested federal issues are apparent." Id. at 1201. In addition, the court found that the case "present[ed] no danger of interference with the balance between federal and state judicial responsibilities" because "the federal issues are quite substantial and exercise of jurisdiction by this federal district court does not offend the traditional state-federal judicial balance." Id. at 1202.

McMahon met the Grable test because there were substantial federal issues in dispute. But, here, there are no federal issues that are actually in dispute. As plaintiffs aptly point out,

---

[24]Defendants' Opposition to Plaintiffs' Motion to Remand at 13, Docket No. 13.

[25]Defendants cite to several other cases involving aviation safety but these are all pre-Grable cases.

"[t]he meaning or interpretation of aviation regulations will play little or no role in deciding this case."[26] Moreover, if defendants are correct that this case involves a substantial federal question because it involves aviation safety, then every aviation accident case would be a federal case. But, this is not what Congress intended. Section 1369(a) of Title 28 of the United States Code provides that "[t]he district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location[.]" This implies that accidents involving fewer deaths, or no deaths as is the case here, may be filed in state courts. Moreover, the FAA has a savings clause which preserves state law remedies. See 49 U.S.C. § 40120(c). Were the court to adopt defendants' argument that this case involves a substantial federal question, the Congressionally approved balance between state and federal courts would be upset.

This case is similar to Bennett v. Southwest Airlines Company, 484 F.3d 907 (7th Cir. 2007). There, a Southwest Airlines flight was landing "in a snowstorm at Chicago Midway International Airport" when it "smashed through a barrier and a fence" and "came to rest in a street, where it crushed a car and killed one of the occupants. Twelve other people on the ground were injured, though the plane's 98 passengers and five crewmembers were safe." Id. at 908. "Tort suits filed in state court [were] removed by the defendants (Southwest, Boeing, and Chicago) on the theory that plaintiffs' claims [arose] under federal law." Id.

---

[26]Plaintiffs' Reply [etc.] at 4, Docket No. 15.

The defendants argued that removal was proper "for aviation accidents because of the dominant role that federal law plays in air transport." Id. at 909. The Seventh Circuit rejected this argument, explaining that resolution of the plaintiffs' claims

> will depend on a fact-bound question such as whether the pilots should have executed a missed approach or, having elected to land, exercised adequate diligence in activating the thrust reversers; whether Boeing should have told air carriers not to count on thrust reversers when calculating how much runway they need; or whether Chicago should have closed the airport because of bad weather. The meaning of federal statutes and regulations may play little or no role.

Id. The court emphasized that "resolution of" the case did not "revolve[] around any particular disputed issue of federal law[,]" but rather "a fact-specific application of rules that come from both federal and state law...." Id. at 909-10. The court went on to state that the fact "[t]hat some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." Id. at 912.

Similarly here, the resolution of plaintiffs' negligence claim will not revolve around any disputed issue of federal law. The federal aviation regulations cited by plaintiffs in their complaint provide the standard of care that applies to their negligence claim. Thus, whether defendants violated these regulations is an essential element of plaintiffs' negligence claim. But, the meaning of these federal regulations is not in dispute. The resolution of plaintiffs' negligence claim will depend on "a fact-specific application of rules that come from both federal and state law" as opposed to a determination as to the meaning of any of the federal aviation regulations.

-11-

In sum, defendants have failed to show that the Grable test has been met. Although the federal aviation regulations have been necessarily raised in this case, the interpretation of those regulations is not in dispute and resolution of plaintiffs' negligence claim in this court would "disrupt[] the federal-state balance approved by Congress.'" Newtok, 21 F.4th at 618. Thus, the court lacks federal question jurisdiction, and this matter must be remanded to state court.

As a final matter, plaintiffs request that they be awarded their attorney's fees and costs associated with bringing the instant motion to remand. "Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Grancare, LLC v. Thrower by and through Mills, 889 F.3d 543, 552 (9th Cir. 2018). "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" Id. (quoting Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008)). "[T]he degree of clarity in the relevant law at the time of removal is a relevant factor in determining whether a defendant's decision to remove was reasonable." Id.

The bases on which defendants removed this case were objectively unreasonable. The law is clear that there is no private right of action under the FAA and that the FAA does not completely preempt state law claims. The law, as set forth in Grable, is also clear as to when a state-law claim, such as plaintiffs' negligence claim, may be considered to be "arising

-12-

under" federal law based on the substantial federal question doctrine. There was nothing in plaintiffs' complaint that suggests that the interpretation of the federal aviation regulations is in dispute. It is also worth noting that the only post-Grable case law involving an aviation accident that defendants cited was the McMahon case, which was plainly distinguishable on the facts. Because defendants did not have an objectively reasonable basis for removal, plaintiffs are entitled to their attorney's fees and costs associated with bringing the instant motion to remand.

## Conclusion

Plaintiffs' motion to remand is granted. This matter is remanded to the Superior Court of the State of Alaska, First Judicial District at Juneau.

Plaintiffs' request for attorney's fees and costs associated with bringing this motion is granted. Plaintiffs shall submit their application for attorneys' fees and costs for the court's consideration on or before September 25, 2023.

DATED at Anchorage, Alaska, this 14th day of September, 2023.

/s/ H. Russel Holland
United States District Judge